**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CSI ENTERPRISES, INC., | ) | Case No. 95-11642-CEM |
| ENERGY FUELS, LTD., | ) | Case No. 95-11645-CEM |
| OREN LEE BENTON, | ) | Case No. 95-11648-CEM |
| ENERGY FUELS EXPLORATION COMPANY, | ) | Case No. 95-11649-CEM |
| NUEXCO TRADING CORPORATION, | ) | Case No. 95-11651-CEM |
| ENERGY FUELS MINING JOINT VENTURE, | ) | Case No. 95-19882-CEM |
| | ) | |
| Debtors: | ) | (Jointly Administered Under |
| | ) | Case No. 95-11642 SBB) |
| | ) | |

---

**TECHSNABEXPORT LTD.'S**
**PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

---

Techsnabexport Ltd. ("**_Tenex_**"), a creditor with the largest claims against certain of the Debtors (as defined herein) and against Nuexco A.G. ("**_Nuexco_**"), by and through its undersigned counsel, submits this proposed Findings of Facts and Conclusions of Law relative to the hearing held on November 19, 2007 (the "**_Hearing_**") on the Motion of by Industrias Nucleares do Brasil ("**_INB_**") seeking distribution of approximately $2,500,000 in funds held in an escrow account to Mr. Remy Butz, in his capacity as administrator in the NEAG insolvency pending in Switzerland (the "**_NEAG Proceeding_**").

By separate motion, Tenex seeks entry of an order authorizing and directing the distribution of the same escrowed funds to Tenex and other beneficiaries of the NEAG Distributions, pursuant to the terms of the Plan (as defined herein) and related documents the ("**_Tenex Motion_**") . Pursuant to Order of this Court, the Court agreed that the Tenex Motion would be heard in conjunction with the INB Motion. The Court

has decided to first rule on the INB Motion, and to conduct a final hearing on the Tenex Motion (to the extent appropriate) on a date to be determined.

Capitalized terms not defined herein shall have the same meaning ascribed to them in the "Stipulation Regarding Facts and Admission into Evidence of Documentary Exhibits" between INB and the Liquidating Trustee filed on November 14, 2007 (the "*Fact Stipulation*").   References to "Hearing" are not cited due to the fact that at the time of the filing of this pleading, Tenex has not received a copy of the Hearing transcript.

### Proposed Findings of Fact

Many, but not all, of the following facts have previously been stipulated to by INB and David J. Beckman, trustee of the Liquidating Trusts of the Debtors (the "*Liquidating Trustee*").

1.    ***Benton Bankruptcy Proceedings.***  In February, 1995, Oren L. Benton ("*Benton*"), Nuexco Trading Corporation ("*NTC*"), Energy Fuels, Ltd. ("*EFL*"), Concord Services, Inc. ("*CSI*"), Energy Fuels Exploration Company ("*EFEX*") and Energy Fuels Mining Joint Venture ("*EFMJV*") (collectively, the "*Debtors*"), filed separate voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Colorado (the "*Court*").   The Debtors' bankruptcy cases are collectively referred to as the "*Benton Bankruptcy Proceedings*."  *Fact Stipulation* at ¶ 2.1.  The Benton Bankruptcy Proceedings were jointly administered under the CSI case (No. 95-11642).   *Fact Stipulation* at ¶ 2.1 n.1.

2.    ***INB Entry of Appearance***.  On September 18, 1995, INB, through U.S. counsel, filed an entry of appearance and request for service of notice in the Benton Bankruptcy Proceedings (Docket No. 680).

3.    ***NEAG Proceeding.***  In 1996, NEAG commenced an insolvency proceeding in Switzerland (the "***NEAG Proceeding***").  Remey Butz ("***Butz***" or "***NEAG Administrator***") was appointed as the insolvency administrator presiding over the NEAG Proceeding.  *Fact Stipulation* at ¶ 2.3.

4.    ***The Benton Bankruptcy Claim Bar Date And Key Claims.***  The Court set September 6, 1995, as the bar date to file claims in the Benton Bankruptcy Proceedings (Docket No. 317).  The following claims were filed in one or more of the Benton Bankruptcy Proceedings:

a.    ***NEAG Claim Filed (At Benton Estates).***  On April 28, 1995, NEAG, then controlled by Benton, filed a proof of claim in one or more of the Benton Bankruptcy Proceedings, by which it asserted two (2) claims totaling approximately $921,207,103.00 (collectively the "***NEAG Claim***").[1]  The NEAG Claim consisted of $57,886,161.00 as a secured claim and $863,320,942 as an unsecured claim.  *Fact Stipulation* at ¶ 2.2.

b.    ***UBS Filed Claims (At Benton Estates And NEAG)***.  On September 6, 1995, UBS filed a secured claim against NTC for monies paid and not recovered, and for losses or damages suffered, by UBS, in respect of the series of secured loans made by UBS to NEAG, and secured letters of credit issued by UBS on

---

[1] Claim Nos. 143 and 147.

behalf of NEAG.  *Fact Stipulation* at ¶ 3.2.  UBS Also filed a claim at NEAG in an unliquidated sum.  Liquidating Trustee Supplemental Ex. E.

      c.    **Tenex Filed Claims (At Benton Estates And NEAG).**  On September 6, 1995, Tenex filed a proof of claim in the amount of $266,964,551.99 against the estates of Benton, NTC, EFL and EFEX.  Liquidating Trustee Supplemental Ex. D.  In addition, Tenex filed a claim against NEAG in the amount of $242,893,509.26. Liquidating Trustee Supplemental Ex. E.

      d.    **INB Filed Claim (At NEAG, Not Benton Estates).**  INB was scheduled as a creditor in the cases of NTC and EFEX, with a disputed, unliquidated and contingent claim.  INB did not file a proof of claim in the Benton Bankruptcy Proceedings, and thus is not a creditor in the Benton Bankruptcy Proceedings.  *See Fact Stipulation* at ¶ 2.14.  INB has filed a claim against NEAG in the amount of CHF62,530,414.55.  Liquidating Trustee Supplemental Ex. E.

     5.    **The Benton Bankruptcy Plan And Settlement Negotiations.**  After the filing of the Benton Bankruptcy Proceedings, it became apparent that it would be difficult, if not impossible, for the Debtors to confirm a plan of reorganization in these cases without the larger claims being resolved.  *See* Disclosure Statement, Ex. 4 at ¶ 1 (*Fact Stipulation* Ex. 2).

     6.    **The Filing Of The Benton Bankruptcy Plan Of Reorganization And Disclosure Statement.**  A plan of reorganization was initially filed with the Bankruptcy Court on February 21, 1997 (Docket No. 1851) along with the "Modified First Amended Disclosure Statement For Modified First Amended Plan Of Reorganization For The Jointly Administered Debtors" (Docket No. 1852) ("**Disclosure Statement**").  The initial

form of plan was amended by modifications filed with the Court on or about June 27, 1997 (Docket No. 2255), and again on or about August 18, 1997 (as confirmed, the "**Plan**").  *Fact Stipulation* at ¶¶ 2.4, 2.5 ; *Fact Stipulation* Ex. 1, 2.

7.     ***Court-Approved Benton Bankruptcy Proceedings Disclosure Statement.***     The Disclosure Statement was approved by the Court's "Order: (i) Approving Disclosure Statement; (ii) Fixing Time For Voting And Filing Objections To Confirmation; (iii) Setting Confirmation Hearing; (iv) Fixing Deadline for Filing Objections To Assumption Or Rejection Of Executory Contracts and Claims Settlement Motion; (v) Fixing Deadline For Filing 1111(b) Election; And (iv) Fixing Deadline For Filing Energy Fuels Subsidiary Creditor Claims" dated February 24, 1997 (D.E. 1851).  The Disclosure Statement included a discussion for the treatment of the NEAG Claim.  *Fact Stipulation* Ex. 4. Subsequent modifications to the Plan did not modify the manner in which the NEAG Claim was treated.  *Fact Stipulation* at ¶ 2.5.

8.     ***The First Amended Benton Bankruptcy Plan And NEAG's Receipt Thereof.***  NEAG and Butz were served with a copy of the Modified First Amended Plan of Reorganization for The Jointly Administered Debtors (the "***First Amended Plan***") with the Disclosure Statement.  *Fact Stipulation* Ex. 2.

9.     ***Treatment Of The NEAG Claim Under The Benton Bankruptcy Plan.***  Under the Plan and as part of the agreement among Butz, the Debtors and the Official Creditors' Committee of the Debtors, the NEAG Claim was allowed against the NTC estate only in the total amount of $320 million, with waiver of all other claims by NEAG against any of the Debtors.  Under section 6.2 of the Plan the $320 million NEAG Claim was separated into two (2) classifications:

a.   ***Class 4 Unsecured Claim***: $100 million (the "***Class 4 Claim***").

i.   ***Treatment:*** NEAG was deemed to have an "Allowed Class 4 Claim against NTC in the amount of $100 million…." *See* Plan, Article 6.2 (*Fact Stipulation* Ex. 1). As the holder of the Allowed Class 4 Claim against NTC, NEAG had a right to a *pro rata* distribution from the NTC assets received by the NTC liquidating trust (the "***NTC Trust***"). *See* Plan at § 4.4 (*Fact Stipulation* Ex. 1).

b.   ***Class 6 Subordinated Unsecured Claim***: $220 million (the "***Class 6 Claim***").

i.   ***Treatment:*** The Plan further provided that NEAG would have an "Allowed Class 6 Claim in the amount of $220 million." *See* Plan at § 6.2 (*Fact Stipulation* Ex. 1). By subordinating the NEAG Class 6 Claim, all other creditors would have to be paid in full before NEAG would ever receive any distribution on account of its Allowed Class 6 Claim. What this effectively meant was that NEAG would not likely see any distribution whatsoever with respect to its Allowed Class 6 Claim of $220 million.

*Fact Stipulation* at ¶ 2.6(a), (b).

10.   ***Plan Confirmation Order.*** On or about August 18, 1997, the Bankruptcy Court entered its "Order Confirming Second Amended Plan Of Reorganization For The Jointly Administered Debtors, As Modified, And Order Approving Claim Settlement Motion And Other Related Motions" (the "***Confirmation Order***") (Docket No. 2397/2398). *Fact Stipulation* at ¶ 2.9.

11.     Pursuant to the Plan, the Liquidating Trustee was appointed upon confirmation of the Plan.  *See* Plan at Article VIII (*Fact Stipulation* Ex. 1).

12.     In the Confirmation Order, the Court found that proper notice of the Disclosure Statement had been given.  *Fact Stipulation* Ex. 6 at 2.

13.     ***Finality Of Confirmation Order.*** The Confirmation Order is a final order in the Benton Bankruptcy Proceedings.  *Fact Stipulation* at ¶ 2.16.

14.     ***Creditor Rights Preserved Under Plan And Confirmation Order.***  The Confirmation Order, paragraph 7, second full paragraph states:

> In the event a final agreement (the "NEAG Receiver Agreement") is executed by the Liquidating Trustee with NEAG, acting through its official Receiver (the "Receiver"), the Liquidating Trustee shall promptly file such Agreement with this Court.  In the event that either the Receiver does not execute the NEAG Receiver Agreement or the NEAG Receiver Agreement is challenged, appealed, or does not become final and effective in accordance with its terms under the laws and procedures of Switzerland, distributions shall be made on the claims of NEAG against the Estates only to an appropriate reserve established by the Liquidating Trustee for the benefit of the NEAG creditors, and the Liquidating Trustee and the NEAG creditors shall be authorized, on appropriate notice, to take any and all other and further action reasonably designed to effectuate the terms of the NEAG settlement, as embodied in the Plan, and the Claims Settlements, including to the extent reasonably necessary the action set forth in Section 6.2(f) of the Plan. This Court shall reserve jurisdiction with respect thereto.

*See* Fact Stipulation at ¶ 2.13.

15.     Therefore, by its terms, if the NEAG Receiver Agreement is not executed by Butz, creditors may pursue the remedies under Plan section 6.2(f).    Plan section 6.2(f) remedy, includes direct distributions to NEAG.   Plan at § 6.2(f).

16. ***The Related Settlement Agreements.*** The Creditors' Committee and the Debtors entered into settlement agreements with many of their largest creditors in an effort to fix such creditors' claims in the Benton Bankruptcy Proceedings (the "***Settlement Agreements***"). *See* Disclosure Statement at 53 (*Fact Stipulation* Ex. 2); Claims Motion (Factual Stipulation Ex. 14). Creditors of the Benton Bankruptcy Estates and the NEAG Estate agreed to fix their claims in Benton Bankruptcy Estates and the NEAG Estate, subject to certain conditions, including approval and finality of the NEAG Receiver Agreement described below. *See* Claims Motion (*Fact Stipulation* Ex. 14); s*ee, e.g.,* Tenex Settlement Agreement (as defined below) at ¶ 7(a)(vi) (Liquidating Trustee Supplemental Ex. D).

17. Approval of the Settlement Agreements was provided for under the Plan (Plan at § 6.3) and approved by the Bankruptcy Court as part of the Plan confirmation pursuant to *inter alia*: (1) the Claims Settlement Motion (the "***Claims Motion***") filed February 24, 1997, which contained as exhibits terms sheets for the settlements and (2) the Supplement To Claim Settlement Motion filed August 11, 1997, which contained as exhibits final settlement agreements. *Fact Stipulation* at ¶ 3.1.

18. The creditors with whom the Creditors' Committee and Debtors entered into Settlement Agreements hold total allowed unsecured claims in the Benton Bankruptcy Proceedings representing approximately 85% of the estimated allowed unsubordinated, unsecured claims under the Plan. *See* Claims Motion at ¶ 6 (*Fact Stipulation* Ex. 14).

19. ***The Tenex Settlement Agreement***. By certain agreement by and among Tenex, the Benton Bankruptcy Estates and Creditors' Committee (the "***Tenex***

8

***Settlement Agreement***"), Tenex received allowed claims in the Benton estate of $125,000,000, NTC of $149,626,356 and EFEX of $37,998,791, none of which claims were subject to subordination, offset, counterclaim or defense. Liquidating Trustee Supplemental Ex. D at § 1(a).  Tenex also received a reduced and allowed claim at NEAG of $177,000,000 plus interest and attorneys fees arising after February 23, 1995. Liquidating Trustee Supplemental Ex. D at § 1(b).  Similar to other creditor Settlement Agreements, the Tenex Settlement Agreement is based on the occurrence of certain events.  Liquidating Trustee Supplemental Ex. D, at §7.

20.    ***NEAG Receiver Agreement.***  In March 1997, a form of settlement agreement (the "***NEAG Receiver Agreement***") was tendered by the Creditors Committee in the Bankruptcy Proceedings to Butz, who asked creditors to comment on it.  *Fact Stipulation* at ¶ 2.7; *Fact Stipulation* Ex. 5.  The NEAG Receiver Agreement was also attached to the Tenex Settlement Agreement, which was conditioned on the execution of the NEAG Receiver Agreement.  *See* Tenex Settlement Agreement at ¶ 7(a)(vi).

21.    Paragraphs 1 and 2 of the NEAG Receiver Agreement contain an extensive discussion of the allowance of the claim of NEAG in the Benton Bankruptcy Proceedings that is consistent with the final treatment of that claim in the Plan.  *Fact Stipulation* Ex. 5 at ¶¶ 1-2.

22.    INB opposed NEAG entering into any such agreement, and informed Butz of its opposition. INB threatened to sue Butz if he signed the NEAG Receiver Agreement.  Tenex supported the proposed NEAG Receiver Agreement.  Butz did not to execute the NEAG Receiver Agreement.  *Fact Stipulation* at ¶ 2.7.

23. ***The UBS Settlement Agreement***. The final settlement agreement with UBS (the "***Final UBS Settlement Agreement***") was filed on August 11, 1997, one week prior to the final confirmation hearing as Docket No. 2367.  *See Fact Stipulation* Ex. 15.

a. The Final UBS Settlement Agreement contained a provision providing for the assignment by UBS of its unsecured claim at NEAG to the NTC Trust. *See* UBS Term Sheet (*Fact Stipulation* Ex. 19); UBS Settlement Agreement (*Fact Stipulation* Ex. 20).

b. Paragraph 5(c) of the NEAG Receiver Agreement states that the UBS unsecured claim has been assigned to the NTC Trust.  *Fact Stipulation* Ex. 5 at ¶ 5(c).

c. Butz was aware of the assignment of the UBS unsecured claim to NTC prior to the filing of the Final UBS Settlement Agreement on August 11, 1997, notwithstanding that Butz did not execute NEAG Receiver Agreement.

24. ***Butz Voted In Favor Of Plan.***  The Plan was submitted to NEAG, and Butz voted in favor of the Plan on behalf of NEAG.  *Fact Stipulation* at ¶ 2.6.

25. ***INB's Notice and Inactions.***  INB admits that it received copies of the Benton Bankruptcy Disclosure Statement and Plan, but choice not to object to either. Further, INB admits that it did not seek to vote on the Plan.  *Hearing*.  INB and/or its counsel received notice of entry of the Confirmation Order in the Bankruptcy Proceedings.  Moreover, INB received a copy of the Confirmation Order as well.  *Fact Stipulation* at ¶ 2.15.

26.    **Overlap In Creditor Groups.**    In the NEAG Proceeding, thirteen (13) creditors filed claims by the required date set in the NEAG Proceeding or filing of claims.  Of those 13 creditors, seven (7) are also creditors in the Benton Bankruptcy Proceedings (collectively the "**Joint Creditors**").[2]  Three others are Swiss governmental entities responsible for administration of the NEAG Proceeding. INB is another creditor. *Fact Stipulation* at ¶ 2.8.   The thirteen creditors in the NEAG Proceeding, and the amount of their filed claims in the NEAG Proceeding, are as follows:[3]

    a.     Tenex (US$242,893,509.26);

    b.     UBS;

    c.     INB (CHF62,530,414.55);

    d.     Kernkraftwerk Gösgen – Däniken AG ("**KKG**") (CHF15,298,509.06);

    e.     Kernkraftwerk Leibstadt AG ("**KKL**") (CHF42,448,000.00);

    f.     Palabora Mining Company Ltd. ("**Palabora**") (CHF2,672,480.20);

    g.     Vostgock Eastern Ore Processing Kombinat ("**Vostgock**") (CHF13,767,998.00);

    h.     Globe Nuclear Services and Supply Ltd. ("**GNSS**") (CHF224,452,161.00);

    i.     Priargunski Mining Chemical Combinat ("**Priargunski**");

    j.     Nuclear Electric Ltd., n/w/a British Energy ("**NEL**") (CHF34,973,750.00);

    k.     Schweizerïsche Eidgenossenschaft ("**SE**") (CHF400.00);

    l.     Staat Solothurn ("**Staat**") (CHF310.05); and

    m.     Einwohnergemelnde Olten ("**EO**") (CHF837.00).

27.    **The Trustee's Escrow Of The NEAG Distributions.**    The amounts otherwise attributable for distributions to NEAG on account of its "Allowed" Class 4 Claim under the confirmed Plan total approximately $2.5 million (the "**NEAG**

---

[2] The Joint Creditors are Tenex, UBS, KKL, GNSS, KKG, NEL, and Palabora.

[3] *See* Copy of NEAG Claims Register (Tenex Motion, Ex. A).

*Distributions*").  No monies have actually been distributed to NEAG on account of its "Allowed" Class 4 Claim under the confirmed Plan.  Instead, the NTC Liquidating Trustee has set up an "escrow" and is holding the NEAG Distributions in that escrow account. The Trustee asserts this is required by Section 7 of the Confirmation Order. *Fact Stipulation* at ¶ 2.10.

28.   ***INB Demand For Release Of NEAG Escrowed Funds.***  On August 31, 2004, INB made a formal written demand to the Liquidating Trustee to release the distributions to NEAG and Butz. *Fact Stipulation* at ¶ 2.12.

29.   ***Liquidating Trustee's Refusal To Release NEAG Escrowed Funds.*** The Trustee, in a written response to INB, refused to release the NEAG Escrowed Funds because, in the view of the Trustee, the Plan as confirmed by the Court required such an escrow unless and until a "NEAG Receiver Agreement" has been reached between the NEAG receiver and NTC.  *Fact Stipulation* at ¶ 2.13.  The asserted basis for the Trustee's requirement of this agreement is Section 7 of the Confirmation Order, which provides part as follows:

> The . . . NEAG Settlement embodied in Article 6.2 of the Plan [is] hereby approved pursuant to Bankruptcy Rule 9019(a) as just, equitable, reasonable, and non-discriminatory compromises of the claims and controversies resolved by such Settlements and are of substantial benefit to creditors and other parties in interest in these Cases. Such Settlements are hereby binding on all persona affected thereby and all contested matters, adversary proceedings and other actions relating in any way to the Claims resolved in such Settlements are hereby dismissed with prejudice and permanently enjoined.  The parties thereto are authorized to transfer any property, execute all documents, and make all payments contemplated by the Settlement.

> In the event a final agreement (the "NEAG Receiver Agreement") is executed by the Liquidating Trustee with NEAG, acting through its official Receiver (the "Receiver"), the Liquidating trustee shall promptly file such Agreement with this Court. In the event that either the Receiver does not execute the NEAG Receiver Agreement or the NEAG Receiver Agreement is challenged, appealed, or does not become final and effective in accordance with its terms under the laws and procedures of Switzerland, distributions shall be made on the claims of NEAG against the Estates only to an appropriate reserve established by the Liquidating Trustee and the NEAG creditors shall be authorized, on appropriate notice, to take any and all other and further action reasonably designed to effectuate the terms of the NEAG settlement, as embodied in the Plan, and the Claims Settlements, including to the extent reasonably necessary the action set forth in Section 6.2(f) of the Plan. This Court shall reserve jurisdiction with respect thereto.

Confirmation Order at ¶ 7; *Fact Stipulation* at ¶ 2.13.

30.    ***The INB Distribution Motion.*** On February 15, 2007, INB filed the INB Motion, thereby seeking an order requiring the funds held by the Liquidating Trustee in an escrow account, attributable to the claim of NEAG be paid directly to Butz (Docket No. 3200).

31.    On April 27, 2007, the Trustee filed his Objection to the INB Motion (the "**Objection to INB Motion**") (Docket No. 3213).

32.    On July 5, 2007, INB filed its Reply to the Objection to the INB Motion (the "**INB Reply**") (Docket No. 3221).

33.    On July 13, 2007, the Trustee filed his Response to the INB Reply (Docket No. 3223).

34.    On July 24, 2007, this Court conducted a telephonic preliminary hearing (the "**Preliminary Hearing**") regarding the INB Motion and related pleadings. INB, the

Liquidating Trustee and Tenex appeared at the Preliminary Hearing.  During the Preliminary Hearing, the Court expressed its desire to effectuate closure of the Liquidating Trusts in the Benton Bankruptcy Estates.  The Court set the matter for a final evidentiary hearing to commence on November 19, 2007.

35.    ***The Tenex Distribution Motion.***  On October 5, 2007, Tenex filed its Tenex Motion, seeking an order authorizing and directing the distribution of the NEAG Distributions to Tenex and other beneficiaries of the NEAG Distributions, pursuant to the terms of the Plan, Confirmation Order and related documents (Docket No. 3234).

36.    On October 17, 2007, Tenex filed a Motion seeking an Order scheduling a final hearing on the Tenex Motion to occur on November 19, 2007, in conjunction with the INB Motion (the "***Tenex Scheduling Motion***") (Docket No. 3237).

37.    On October 25, 2007, INB filed its Objection to both the Tenex Motion and the Tenex Scheduling Motion (the "***INB Objection to Tenex's Motions***") (Docket No. 3239).

38.    On October 29, 2007, this Court entered its Order (the "***Scheduling Order***") granting, in part, the Tenex Scheduling Motion (Docket No. 3240).  Pursuant to the Scheduling Order, the Tenex Motion was to be heard on November 19, 2007, in conjunction with the INB Motion.  The Scheduling Order permitted Tenex to appear, participate and make argument at the hearing, but did not permit Tenex to offer evidence or witnesses of its own.

39.    On October 31, 2007, Tenex filed it Reply to the INB Objection to Tenex's Motions (Docket No. 3241).

40.     ***The Butz Letter.***   On November 15, 2007, Butz submitted a letter to this Court (the "***Butz Letter***").    At the Hearing, the Liquidating Trustee provided a translation of the Butz Letter (the "***Translation***").    According to the Translation, Butz acknowledges that there are two options with respect to distributing the NEAG Distributions:   (1) pay out the NEAG Distributions directly to the NEAG creditors or (2) transfer the NEAG Distributions to Switzerland to be distributed there.   According to the Translation, Butz states that either option should guaranty the costs of the Cantonal Bankruptcy Office, estimated at approximately $200,000, and be fair to all creditors. The Butz Letter further states that the NEAG Proceeding in still not in the stage of the "Collocation Proceeding," the stage of reviewing claims of the creditors, due to the ongoing litigation between INB and UBS.   The Butz Letter also states that while the litigation between INB and UBS will likely impact the value of the claims of INB and UBS in the NEAG Proceeding, it will not affect the claims of the remaining NEAG Proceeding creditors.   Liquidating Trustee's Supplemental Ex. F.

41.     ***INB's Recovery On INB Claims.***   INB has received recovery on at least some, and perhaps all, of its claims against NEAG. *Fact Stipulation* at ¶ 3.4. Specifically, INB's claim against NEAG is based on damages from breaches of a uranium Loan Agreement involving three lots of enriched uranium—Lots 2, 3 and 5.

42.     ***UBS Recovery On Certain UBS Claim.***   UBS fixed its claim in the Benton Bankruptcy Proceedings.   The Debtors paid all but $7.5 million of the UBS Claim. The initial terms of the settlement with UBS were embodied in a term sheet (the "***UBS Term Sheet***") that was attached to the Claims Settlement Motion and served on creditors in the case.   *Fact Stipulation* Ex. 19.    Subsequently, a second formal

settlement agreement with UBS was filed with the Claims Settlement Supplement.  *Fact Stipulation* Ex. 20.   The payments were made based on the terms of the settlement with UBS.  *Fact Stipulation* at ¶ 3.3.

43.   ***Recovery On UBS Carve Out And Status Of German Litigation.***  The Liquidating Trustee asserts that under the Final UBS Settlement Agreement, NTC is entitled to receive money from UBS respect to the assets and claims in dispute with INB.  *Hearing*.

44.   INB has been in litigation with UBS concerning its rights in certain uranium material.  While litigation has been pending between INB and UBS, the price of uranium has substantially increased.  *Fact Stipulation* at ¶¶ 3.4(a), 3.4(d).

45.   Based upon the Stipulation between INB and the Liquidating Trustee, the follow occurred with respect to the UBS and INB litigation in Germany:

a.   INB prevailed over UBS as to ownership of Lot 5 in April 2002. Lot 5 had a value in April 2002 of $10.4 million.  *Id.*

b.   INB and British Energy ("***BE***") settled their dispute over Lot 3. Essentially, Lot 3 was split between INB and BE, with parties further agreeing to a split of storage fees and unreimbursed court costs.  With respect to Lot 3, pursuant to the a settlement agreement dated August 24, 2005, INB and BE split Lot 3, and INB paid: €56,400.00 as and for its portion of unpaid storage fees (U.S.$69,011.04)[4] and (b) €29,625.00 as and for unreimbursed Court Costs (U.S.$36,249.15).  As such, INB

---

[4] *See* "Currency Converter," €=U.S. $1.2236 as of August 24, 2005 (www.oanda.com/convert/classic ).

received net value of U.S.$4,708,007.40 from the settlement with BE, less its fees and costs in litigating the matter.  *Id.*

  c.  Litigation is still pending in Germany over Lot 2.  In that litigation, UBS and Texas Utilities, subject to such decision being upheld on appeal, have prevailed.  The value of the uranium being claimed by UBS at today's prices exceeds $40,000,000.  *Id.*

  46.  ***The Hearing.***  On November 19, 2007, the Court conducted the Hearing on the INB Motion and argument on the Tenex Motion.

  47.  At the Hearing, the following exhibits (attached as exhibits to the Fact Stipulation) were admitted into evidence:

  a.  Plan (as confirmed) (*Fact Stipulation* Ex. 1);

  b.  Disclosure Statement (as approved) (*Fact Stipulation* Ex. 2);

  c.  Order Approving Disclosure Statement (*Fact Stipulation* Ex. 3);

  d.  Disclosure Statement Excerpt Discussing NEAG claim (*Fact Stipulation* Ex. 4);

  e.  Proposed NTC/NEAG Settlement Agreement (*Fact Stipulation* Ex. 5);

  f.  Confirmation Order (*Fact Stipulation* Ex. 6);

  g.  Letter from T. Salerno to Tenex/UBS dated July 14, 1997 (*Fact Stipulation* Ex. 7);

  h.  Letter dated August 22, 1997 from UBS to T. Salerno (*Fact Stipulation* Ex. 8);

i. Letter from Tenex to T. Salerno dated September 17, 1997 (*Fact Stipulation* Ex. 9);

j. Letter dated August 31, 2004 from INB to J. Huemoeller (*Fact Stipulation* Ex. 10);

k. Letter from J. Huemoeller to D. Weikersheimer dated September 17, 2004 (*Fact Stipulation* Ex. 11);

l. Portion of NTC Schedules (*Fact Stipulation* Ex. 12);

m. Portion of EFEX Schedules (*Fact Stipulation* Ex. 13);

n. Claims Settlement Motion dated February 24, 1997 (*Fact Stipulation* Ex. 14);

o. Supplement to Claim Settlement Motion dated August 11, 1997 (*Fact Stipulation* Ex. 15);

p. Transcript—Hearing held August 8, 1997 (*Fact Stipulation* Ex. 16);

q. Transcript of August 18, 1997 Continued Confirmation Hearing (*Fact Stipulation* Ex. 17);

r. UBS Claim filed against NTC (*Fact Stipulation* Ex. 18);

s. UBS Term Sheet (from Claims Settlement Motion) (*Fact Stipulation* Ex. 19);

t. UBS Settlement Agreement (from Supplement To Claims Settlement Motion) (*Fact Stipulation* Ex. 20);

u. Chart showing payments made to Joint Creditors (*Fact Stipulation* Ex. 21);

v. The NTC Liquidating Trust Agreement (Liquidating Trustee Ex. B);

w. The October, 2007 Status Report (Liquidating Trustee Ex. C) ;

x. Tenex Settlement Agreement (Liquidating Trustee Ex. D);

y. Official (Signed and Sealed) NEAG Claims Register (Liquidating Trustee Ex. E)

z. Liquidating Trustee's English Translation of Butz Letter (Liquidating Trustee Ex. F).

48. In summary, the Fact Stipulation establishes the following:

a. INB had actual and timely notice of the case and did not timely file a proof of claim.

b. INB and its counsel were served with a copy of the Confirmation Order.

c. Attempts were made, both before and after confirmation of the Plan, to bring INB into the Benton Bankruptcy Proceedings, with no avail.

d. Butz had knowledge prior to confirmation that the UBS claim had been assigned to or carve out to NTC.

e. Butz had been provided with an extensive discussion of the basis for the treatment of the NEAG claim both in the Disclosure Statement, Plan and in other documents.

f. Butz voted in favor of the Plan.

g.      Section 6.2(a) of the Plan contained provisions that ameliorated the effect of the 68.75% subordination of the NEAG claim for creditors of NEAG, which provisions would have applied to INB.

h.      None of the NEAG Distributions have been distributed to Butz.

i.      If the NEAG Distributions are distributed to the Administrator Butz, then a precondition to many of the Settlement Agreements – that the Debtors, the Creditors' Committee and NEAG would enter into a settlement agreement whereby the NEAG Distributions are prohibited from being distributed directly to Butz – would not be met, and as such, these Settlement Agreements may not be in force and the creditors' claims may be re-opened in both the Benton Bankruptcy Proceedings and the NEAG Proceedings.

## Liquidating Trustee's Proposed Conclusions of Law

### A.      INB Does Not Have Standing To Bring The INB Motion

1.      INB asserts that notwithstanding that the Confirmation Order is final, it has standing to challenge it 10 years after its entry.  INB claims that it has standing to pursue such action because it is a "party in interest."  *See* INB Motion at 5.

2.      Pursuant to Bankruptcy Code section 1109(b), any "party in interest" may raise and appear and be heard in a case.  11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter.").

3.      INB did not file a proof of claim in the Benton Bankruptcy Proceedings.  INB is not a creditor in the Benton Bankruptcy Proceedings.  Instead, INB

is a creditor in the NEAG Proceedings, and as such, INB's rights in these proceedings are subject to those of Butz as the NEAG receiver.  Thus, INB is merely a creditor of a creditor in these cases.

4.     Although the Bankruptcy Code does not define a "party in interest," it does list examples, including therein creditors, but not creditors of creditors.   11 U.S.C. § 1109(b).

5.     "In general, a 'party in interest' under section 1109(b) is a person with a ***direct financial stake*** in the outcome of the case . . . ."  7 *Collier on Bankruptcy* ¶ 1109.02[1] (15th ed. rev. 2007) (emphasis added); *see also Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983) ("Generally, the 'real party in interest' is one who, under applicable substantive law, has the legal right which is sought to be enforced . . . .") (citations omitted).

6.     As a creditor of a creditor, INB does not have a direct, ***but rather an indirect***, financial stake in the outcome of these cases, and thus does not qualify as a "party in interest" so as to give it standing.  *See Southern Blvd., Inc. v. Martin Paint Stores (In re Martin Paint Stores)*, 207 B.R. 57, 61 (S.D.N.Y. 1997) ("***The concept [of a party in interest] does not, according to the Second Circuit, encompass a creditor of one of the debtor's creditors***.  Such a party may be deeply concerned about the bankruptcy proceeding, since the debtor's ability to pay its creditor may affect the creditor's ability to pay, in turn, its creditor.  But the party's legal rights and interests can only be asserted against the debtor's creditor, not against the debtor, and hence it is not a 'party in interest' under the Second Circuit's view of section 1109.") (emphasis added) (citations omitted); *In re Refco, Inc.*, 2007 WL 2893370, at **4-7 (2d Cir. Oct. 5, 2007)

(stating that the investors of a creditor that entered into a settlement agreement with the debtor "maintain a 'financial interest' in [the creditor], but they are not a 'party in interest' within the meaning of the bankruptcy code"); *Greg Rest. Equip. & Supplies, Inc. v. The Tour Train P'ship (In re The Tour Train P'ship)*, 15 B.R. 401, 402 (Bankr. D. Vt. 1981) (holding that a judgment creditor of a creditor of the debtor was not a "party in interest" because the judgment creditor was not a direct creditor of the debtor).

7.     Other cases cited by INB in the INB Motion are either distinguishable or not on point.  In *In re James Wilson Assoc.*, 965 F.2d 160 (7th cir. 1992) J. Posner found that the party seeking relief had no standing.  *In re Peachtree Lane Assoc., Ltd.,* 188 B.R. 815, 827 (N.D. Ill. 1995) involved a party who had timely opposed confirmation of plan or reorganization and timely appealed the confirmation order.  That is not the situation here.

**B.     The INB Motion Improperly Challenges The Plan And Confirmation Order**

8.     The Confirmation Order is a final order and INB admits it received timely notice of entry of the Confirmation Order.  *Fact Stipulation*, ¶¶ 2.15, 2.16.

9.     The Confirmation Order states that if the NEAG Receiver Agreement is not entered into, then the NEAG Distributions shall "be made only to an appropriate reserve established by the Liquidating Trustee for the benefit of the NEAG Creditors . . . ."  *Confirmation Order* at ¶ 7 (emphasis added) (Fact Stipulation Ex. 6).  The relief sought pursuant to the INB Motion – to have the NEAG Distributions be distributed directly to Butz – is inconsistent with the Plan and Confirmation Order.  Accordingly, INB is improperly challenging the Confirmation Order.

10.     INB is bound by the Confirmation Order regardless of whether it filed a proof of claim or voted for the Second Amended Plan.  *In re UNR Industries, Inc.*, 71 B.R. 467, 472 (Bankr. N.D. Ill. 1987) ("Assuming that a plan is confirmed by the Court, it will be binding on all known victims who have been diagnosed as having the disease by the time of confirmation regardless of whether they vote for the plan and regardless of whether they file proofs of claims.").

11.     Modification of the Plan and Confirmation Order as requested by INB invokes this Court's equitable powers given the time period that has expired since entry of the Confirmation Order.   Fed. R. Bankr. P. 9024.  In order to invoke such powers a party must first show that it timely pursued other remedies which were available to it.  *In re Apex International Management Services, Inc.,* 215 B.R. 245, 250 (Bankr. M.D. Fla. 1997).  INB, by its own admission, did not do this.

12.     Distributions have commenced under the Plan.

**C.     INB's Motion Seeks Relief Improper Under The Plan**

13.     The relief sought by INB, distributions to Butz, violates the terms of the Plan and Confirmation Order.

14.     The Plan incorporated a number of the Settlement Agreements, including the Tenex Settlement Agreement.  Plan § 6.3.  These Settlement Agreements contemplated certain specific treatment of claims asserted against NEAG.   For example, the NEAG Receiver Agreement was a condition to the Tenex Settlement Agreement.   Tenex Settlement Agreement at § 7(a)(vi) (Liquidating Trustee Supplemental Ex. D).   The relief sought by INB fails to implement or account for these

provisions as incorporated and intended by the Plan.  The INB relief requested is inconsistent with the terms of the Plan.

15.    In addition, under paragraph 7 of the Confirmation Order, absent execution of the NEAG Receiver Agreement, distributions cannot be made to Butz on behalf of the NEAG Claim.

16.    Further, under paragraph 7 of the Confirmation Order, in the absence execution of the NEAG Receiver Agreement, creditors may seek various remedies, including but not limited to direct distribution of NEAG Distributions to NEAG Creditors.

**D.    The Butz Letter Was Admitted Relevant Evidence**

17.    The Court received the Butz Letter in evidence without objection of INB.  *Hearing.*

18.    Despite the arguments of INB, the Hague Evidence Convention and the Swiss Criminal Code have absolutely no relevance to this proceeding.  This proceeding is pending in a federal court of the United States, and therefore is governed by the Federal Rules of Evidence ("***FRE***").  Both Rule 101 and Rule 1101 of the FRE state quite clearly that the FRE governs the admission of evidence in proceedings before United States courts, including the bankruptcy courts.  *See also* Fed. R. Civ. P. 43 (allowing written submissions in hearings on motions).

In summary, the Court should conclude the following:

a.    INB lacks standing to challenge the Confirmation Order.

b.    The INB Motion is denied.

      c.      The Butz letter is admissible.

      d.      The NEAG Distributions shall not be distributed to Butz for distribution to the NEAG creditors.

e.      The Court will consider the Tenex Motion to permit a direct distribution of the NEAG Distributions to the NEAG creditors, with dates set by separate order.

Dated:          November 30, 2007                    Respectfully submitted,

                                                    **WHITE & CASE** LLP


                                    By:  _____/s/ Francis A. Vasquez, Jr._
                                         Francis A. Vasquez, Jr.
                                         Sam J. Alberts
                                         Joshua M. Hantman
                                         701 Thirteenth St., N.W.
                                         Washington, D.C.  20005
                                         tel.: (202) 626-3600
                                         fax: (202) 639-9355

                                         *Counsel to Techsnabexport Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that copies of **TECHSNABEXPORT LTD.'S PROPOSED FINDINGS OF FACTS AND CONCLUSTIONS OF LAW**  was served on this 30th day of November, 2007 by United States First Class mail, postage prepaid and by email to the parties on the attached list:

        Joanne C. Speirs
        Office of the U.S. Trustee
        999 18th Street, Suite 1551
        Denver, Colorado  80202

        David J. Beckman
        FTI Consulting, Inc.
        7887 East Belleview Ave., Suite 650
        Englewood, CO  80111

        James L. Huemoeller, Esq.
        Ryley Carlock & Applewhite
        1999 Broadway, Suite 1800
        Denver, CO  80202

        Lawrence Bass
        Holme Roberts & Owen
        1700 Lincoln Street, Suite 4100
        Denver, CO  80203-4541

        Thomas J. Salerno
        Squire Sanders & Dempsey
        Two Renaissance Square
        40 N. Central Ave., Suite 2700
        Phoenix, AZ 85004

<u>/s/ Francis A. Vasquez, Jr.</u>
Francis A. Vasquez, Jr.